UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED RENTALS, INC.,

    Plaintiff,

v.                         CASE NO: 8:08-cv-853-T-33TBM

KIMMINS CONTRACTING CORPORATION,

    Defendant.
_____/

**ORDER**

This cause comes before the Court pursuant to United Rentals, Inc.'s ("United Rentals") Motion for Partial Summary Judgment (Doc. # 60), which was filed on May 6, 2009, and Kimmins Contracting Corporation's ("Kimmins") Motion for Summary Judgment (Doc. # 61), which was filed on May 6, 2009. These motions are ripe for this Court's review.

**I.**    **Factual and Procedural Background**

    **A.**    **United Rentals' Rental of Equipment to Kimmins**

United Rentals rented heavy equipment to Kimmins for use at a mining reclamation project located in Fort Green, Florida. This heavy equipment included two motorscrapers ("scrapers"). The first scraper was rented by Kimmins from

United Rentals on May 14, 2002, contract number 25544384 (Doc. # 60, Exh. A, at 2) and the second on June 14, 2002, contract number 26267919, both pursuant to Rental Out Contracts. (Doc. # 60, Exh. B, at 2). Even though Kimmins only used two scrapers at a time for their project, six scrapers in total were used during the rental period as scrapers were exchanged in and out as necessary. (Ms. Mears Dep., Doc. # 65, at 28:1-8). United Rentals would replace scrapers that would break down or need maintenance.

Ms. Mears, United Rentals' corporate representative, testified that when United Rentals delivered equipment to Kimmins, the driver who delivered would have a copy of either a Rental Out Contract or Exchange Equipment Form. (Id. at 28:1-8). When United Rentals delivered each scraper, it issued a Rental Out Contract. When it exchanged equipment, it issued an Exchange Equipment Form. (Id. at 44:11-16). She also testified they never used any master rental agreement but instead a Rental Out Contract was generated for each piece of equipment. (Id. at 86:9-23).

The Rental Out Contract and the Exchange Equipment Form had a signature line for the customer to sign and had a provision stating "United hereby leases to Customer the

2

Equipment (as defined in the Terms and Conditions on the reverse side) and Customer hereby accepts all TERMS AND CONDITIONS listed in this rental agreement...." (Doc. # 60, Exh. A, at 2 and 5). The Terms and Conditions had an indemnification provision in paragraph 4 requiring the customer to:

> INDEMNIFY AND HOLD UNITED RENTALS, INC., HARMLESS FROM ANY CLAIMS, WHETHER THOSE CLAIMS ARISE IN TORT, CONTRACT, STRICT LIABILITY, PRODUCTS LIABILITY OR OTHER CAUSES OF ACTION, REGARDLESS OF WHETHER SUCH CLAIMS OR ACTIONS ARE FOUNDED IN WHOLE OR PART UPON ANY NEGLIGENT ACT OR OMISSION OF UNITED RENTALS, INC. . . . INCLUDING LEGAL COSTS INCURRED IN DEFENSE OF SUCH CLAIMS.

(Id. at 3). The Terms and Conditions also had a requirement in paragraph 7 to immediately notify United Rentals if the equipment becomes unsafe, malfunctions or requires repair. (Id. at 3).

The Rental Out Contracts and the Exchange Equipment Forms at issue in this case, however, suffer from two complications. First, except for Rental Contract # 25544384 with a contract date of 5/14/02 and referring to the scraper with serial number 831706 ("706 Scraper"), none of the other Rental Out Contracts and Exchange Equipment Forms had pre-

printed Terms and Conditions on the reverse of the document. (Doc. # 60, Exh. A and B). For all other documents, the reverse side was blank. (Id.).

The second issue is that only one of the Rental Out Contracts and only one of the Exchange Equipment Forms were signed. The two contracts that were signed include Equipment Invoice # 25544384-002 dated 6/4/02, which exchanged scraper 831706 for scraper 9XG00797 (Doc. # 60, Exh. A, at 5) signed by James Daniels, who was employed as a parts runner (Doc. # 61, Exh. E, at 2), and Rental Out Contract # 26267919 dated 6/14/02 (Doc. # 60, Exh. B, at 2) signed by Don Deremer, a delivery driver. (Doc. # 61, Exh. E, at 2). Neither of these signed documents had Terms and Conditions on the reverse side. (Doc. # 60, Exh. A and B).

Despite most of the documents not being signed, and no agreement with the Terms and Conditions on the reverse side signed by Kimmins, the parties engaged in the following behavior consistent with the terms of the contracts: (1) Kimmins provided United Rentals with a Certificate of Insurance ("COI") that named United Rentals as an additional insured; (2) Kimmins paid the rental fees; (3) Kimmins notified United Rentals when equipment was broken; (4)

4

United Rentals paid for normal wear and tear and maintained/exchanged the scrapers; (5) Kimmins paid for repairs when the damage was Kimmins' fault; and (6) Kimmins paid the environmental damage fees as required by the rental agreements.

B.  **Mr. Aaron Cooley's Accident**

Mr. Aaron Cooley was employed by Kimmins during the time when the scrapers were being used by Kimmins. Mr. Cooley claimed he had an accident and suffered an injury on September 10, 2002,[1] when the seat on the scraper he was operating malfunctioned. Mr. Cooley sued United Rentals in Florida state court ("Cooley action") on December 20, 2006, claiming that the scraper he was using while employed by Kimmins was defective. (Cooley's Trial Transcript, Doc. # 60, Exh. I, at 383:21-384:11).  On July 11, 2008, a jury entered a $3,105,854 verdict against United Rentals.  (Doc. # 60, Exh. R, at 2).  The judgment is currently on appeal to the Florida Second District Court of Appeal.

---

[1] The date of Mr. Cooley's injury changed between the time he filed his initial complaint and the time his case went to trial. The dates of September 5, 2002, September 10, 2002, and October 9, 2002, were all alleged at one point in time.  The date of the incident, however, does not change the Court's analysis.

5

United Rentals was not informed about their scraper causing an injury until October 22, 2002. (Ms. Mears Dep., Doc. # 65, at 96:19-97:3). Kimmins claims the scraper that caused the accident had a serial number of 9XG00797 ("797 Scraper"). Mr. Cooley testified in the Cooley action that he was injured on the scraper on which the United Rentals' mechanic had, on the same day Mr. Cooley was injured, worked to repair a malfunctioning seat, and the United Rentals' mechanic only worked on the 797 Scraper on the date of the alleged injury. (Doc. # 61, Exh. B at 2). Kimmins had informed United Rentals about problems with this scraper before the accident (Id.). More work was done to repair the 797 Scraper on September 13, 2002. (Doc. # 72, Exh. K).

United Rentals claims there were three scrapers at Kimmins between September and October 2002 when the accident could have occurred and do not agree that the 797 Scraper definitively caused the injury to Mr. Cooley. (Ms. Mears Dep., Doc. # 65, at 28:1-29:21). The serial numbers of the three scrapers that were at the worksite between September and October 2002 are 9XG00797 ("797 Scraper"), 9XG00840 ("840 Scraper"), and 6BK00319 ("319 Scraper").

## C. United Rentals' Complaint

Kimmins refused to indemnify and defend United Rentals from Mr. Cooley's lawsuit when United Rentals demanded Kimmins do so on November 26, 2007. (Doc # 15, Exh. H). United Rentals subsequently filed this action against Kimmins alleging Indemnification (Count I); Breach of Contract (Count II); and Spoliation of Evidence (Count III). Both parties have filed motions for summary judgment that are now ripe for the Court's review.

## II. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation,

Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988)(citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981), cert. denied, 456 U.S. 1010 (1982).

In this diversity case, the Court applies the substantive law of the forum state unless federal constitutional or statutory law compels a contrary result. Tech. Coating Apps., Inc. v. United States Fid. & Guar. Co., 157 F.3d 843, 844 (11th Cir. 1998). Furthermore, this Court must apply Florida law in the same manner that the Florida Supreme Court would apply it. Brown v. Nicholas, 8 F.3d 770, 773 (11th Cir. 1993).

**III. Analysis**

The key issue in this case is whether the parties entered into a binding contract for Kimmins to defend and indemnify United Rentals for its own negligence.

**A.   Enforceability of Unsigned Contract**

Defendant alleges that there was no meeting of the minds because there were no Terms and Conditions on the reverse side of all the contracts except for one, most of the contracts were unsigned, and the Kimmins employees who did sign did not have the requisite authority to bind the company. Plaintiff argues that the course of conduct of the parties indicates there was a valid written contract with the Terms and Conditions on the reverse side.

"Under Florida law, '[i]t is well established that a meeting of the minds of the parties on all essential elements is a prerequisite to the existence of an enforceable contract...'" Barnes v. Diamond Aircraft Indus., Inc., 499 F.Supp.2d 1311, 1316 (S.D. Fla. 2007) (quoting Greater N.Y. Corp. v. Cenvill Miami Beach Corp., 620 So.2d 1068, 1070 (Fla. 3d DCA 1993)). "An unsigned contract may be binding and enforceable where the parties perform under the contract, because assent may be shown by

10

the parties' conduct."  Siegel v. Newagecities.com, Inc., 920 So.2d 1274, 1276 (Fla. 4th DCA 2006); see also Consol. Res. Healthcare Fund I, Ltd. v. Fenelus, 853 So.2d 500 (Fla. 4th DCA 2003); Integrated Health Servs. of Green Briar, Inc. v. Lopez-Silvero, 827 So.2d 338 (Fla. 3d DCA 2002); Sosa v. Shearform Mfg., 784 So.2d 609 (Fla. 5th DCA 2001).

The instant case, however, is distinguishable from these cases in which the courts held an unsigned contract enforceable.  The case at bar does not involve a situation where both sides were given the complete contract, one side did not sign, and then the aggrieved party petitioned the court for enforcement of the written terms.  Instead this is a case involving multiple contracts, almost none of them having Terms and Conditions on the reverse side, and the aggrieved party wanting to enforce provisions that were not in the written contracts.

Each piece of equipment had its own distinct contract whether that was a Rental Out Contract or Exchange Equipment Form.  United Rentals' corporate representative stated they generated a new contract for each piece of equipment. (Ms. Mears Dep., Doc. # 65, at 86:9-23).  Furthermore, on the front of each Rental Out Contract or Exchange Equipment

contract it stated the customer agreed to the Terms and Conditions "listed in this rental agreement" and only references other agreements by stating "this rental agreement supersedes all other purchase orders or terms and conditions contained in any Customer's agreement or forms." (Doc. #61, Exh. D, at 14).

Therefore, even if this Court agrees that the course of conduct of the parties or the signing of the contracts make the written contracts enforceable, under Florida law, an ambiguous contract term is construed against the drafter. City of Homestead v. Johnson, 760 So.2d 80, 84 (Fla. 2000). Thus Kimmins' contractual obligations for all the scrapers except for the 706 Scraper would be set forth only on the front page of the contract as the reverse side was blank. The 706 Scraper was not one of the three scrapers that was on Kimmins' premises during the time when the accident could have occurred. The front side of the contract did not have the indemnification clause or the clause obligating Defendant to notify United Rentals of a malfunction.

Thus, this Court concludes that except for the 706 Scraper contract, which is not relevant to the claims, the unsigned and signed written contracts, to the extent they

are enforceable, do not have any provision obligating Kimmins to indemnify United Rentals and do not have any provision obligating Kimmins to immediately notify United Rentals if the scraper required repair or became unsafe.

**B.   Indemnification**

Under Florida law, "in order for the indemnity contract to be construed as allowing indemnification for the indemnitee's own negligence, that intention must be expressed in clear and unequivocal terms." Florida Power & Light v. Mid-Valley, Inc., 763 F.2d 1316, 1318 (11th Cir. 1985). Furthermore, "[i]ndemnity contracts are subject to the general rules of contractual construction; thus an indemnity contract must be construed based on the intentions of the parties." Dade County Sch. Board v. Radio Station WQBA, 731 So.2d 638, 643 (Fla. 1999). Finally, "[u]nder Florida law, agreements to indemnify parties against their own wrongful acts are not favored and will be enforced only if they express such an intent in clear and unequivocal terms." Gibbs v. Air Canada, 810 F.2d 1529, 1534 (11th Cir. 1987)(citing Charles Poe Masonry, Inc. v. Spring Lock Scaffolding Rental Equip. Co., 374 So.2d 487, 489 (Fla. 1979); accord Mitchell Maintenance Sys. v. State Dept. of

Transp., 442 So.2d 276, 278 (Fla. 4th DCA 1983)).

Because the contracts for the 797, 840, and 319 Scrapers had no Terms and Conditions on the reverse side of the documents, there was no meeting of the minds on the indemnification clause. Additionally, United Rentals can establish no conduct that shows Kimmins' had a clear and unequivocal intent to indemnify United Rentals for its own negligence. Therefore, Plaintiff cannot succeed on Count I.

### C. **Breach of Contract**

To sustain a claim for breach of contract under Florida law there must be "(1) a valid contract, (2) a material breach, and (3) damages." Bookworld Trade, Inc. v. Daughters of St. Paul, Inc., 532 F.Supp.2d 1350, 1357 (M.D. Fla. 2007)(citing Merin Hunter Codman, Inc. v. Wackenhut Corrs. Corp., 941 So.2d 396, 398 (Fla. 4th DCA 2006)).

United Rentals alleges that Kimmins had an obligation to notify United Rentals of equipment malfunctions and that they were not notified about the injury to Mr. Cooley until over a month had passed. As a result of this delay, United Rentals argues, evidence was lost, and they were severely disadvantaged during Mr. Cooley's civil trial. Kimmins responds that there was no valid contract for defense and

indemnification, and even if there was a valid contract for such, they did not breach their duty because they informed United Rentals about the problem with the 797 Scraper before the accident and were not required to do anything else.

As discussed earlier, the written contracts can not serve as a basis for a breach of contract claim because the reverse sides of the contracts, that should have contained the notification provision, were blank. Thus, there was no meeting of the minds on the terms of the reverse side of the contract and no contract as to a notification provision.

Even if a contract could be established by the conduct of the parties, the Court finds that Kimmins did not violate any obligation to notify United Rentals of equipment malfunction or needed repairs. Kimmins did notify United Rentals regarding problems with the seat of the 797 Scraper before the accident, and repairs were made again on the 797 Scraper three days after the alleged date of the accident of September 10, 2002. (Doc. # 72, Exh. K). Therefore, because Kimmins had informed United Rentals about problems with the 797 Scraper before the accident and because the repairs were ongoing during the time of Mr. Cooley's accident, Kimmins fulfilled whatever obligations it had to

inform United Rentals about repairs.  Accordingly, Plaintiff cannot succeed on Count II.

   **D.   Spoliation of Evidence[2]**

   The elements of a spoliation claim under Florida law are:

> (1) the existence of a potential civil action; (2) a legal or contractual duty to preserve evidence which is relevant to the potential civil action; (3) destruction of that evidence; (4) significant impairment in the ability to prove the lawsuit; (5) a causal relationship between the evidence destruction and the inability to prove the lawsuit; and (6) damages.

Green Leaf Nursery v. E.I. Dupont De Nemours & Co., 341 F.3d 1292, 1308 (11th Cir. 2003) (quoting Continental Ins. Co. v. Herman, 576 So.2d 313, 315 (Fla. 3d DCA 1990)).  "A duty to preserve evidence can arise by contract, by statute, or by a properly served discovery request (after a lawsuit has already been filed)." Royal & Sunalliance v. Lauderdale Marine Center, 877 So.2d 843, 845 (Fla. 4th DCA 2004) (quoting Silhan v. Allstate Ins. Co., 236 F.Supp.2d 1303,

---

[2]This Court abated Count III pending resolution of the Cooley action (Doc. # 31).  The stay, however, does not preclude the Court from granting summary judgment as there is no basis for the claim.  Additionally, the Court notes that Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. # 72) fails to respond to Defendant's motion and arguments as to the Spoliation of Evidence claim.

16

1309 (N.D. Fla.2002)).

As discussed above, there was no contractual duty for Kimmins to preserve evidence. At most there was a duty to inform United Rentals when repairs were required, which is distinct from a duty to preserve evidence. Accordingly, United Rentals cannot establish the elements of a spoliation claim under Florida law.[3] Accordingly, United Rentals cannot succeed on Count III.

---

[3]Plaintiff argues that Kimmins also has a legal duty to preserve evidence based on Florida's Workers Compensation Law. (Amended Complaint, Doc # 15 ¶ 56). Florida Statutes § 440.39(7) regarding claims against third parties does impose a duty on the employee, employer, and insurance carrier to "cooperate with each other in investigating and prosecuting claims and potential claims against third-party tortfeasors by producing nonprivileged documents and allowing inspection of premises...." While a duty to cooperate "must necessarily include a duty to preserve evidence," the purpose of this statute is to preserve actions "against third-party tortfeasors and to impose a duty of cooperation to that end." Gayer v. Fine Line Const. & Elec., Inc., 970 So.2d 424, 426-27 (Fla. 4th DCA 2007) (quoting General Cinema Beverages of Miami, Inc. v. Mortimer, 689 So.2d 276, 279 (Fla. 3d DCA 1995)). Allowing the third-party tortfeasor to bring a spoliation action based on § 440.39(7) would be contrary to the purpose of the statute to promote cooperation between employers and employees against third-party tortfeasors and fails to establish a basis for liability in this context.

Accordingly, it is

**ORDERED, ADJUDGED, and DECREED**:

(1) Plaintiff's Motion for Partial Summary Judgment (Doc. # 60) is **DENIED**.

(2) Defendant's Motion for Summary Judgment (Doc. # 61) is **GRANTED**.

(3) Plaintiff's Daubert Motion to Strike (Doc # 77) is **DENIED AS MOOT**.

(4) Defendant's Motion for Leave of Court to Respond to Plaintiff's Supplemental Authority (Doc. # 85) is **DENIED AS MOOT**.

(5) The Clerk is directed to enter judgment in favor of Defendant and close this case.

DONE and ORDERED in Chambers in Tampa, Florida, this the 14th day of December, 2009.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record